IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **VERNON T. JONES, JR.,** as Receiver for W Financial Group, LLC, | § § § § | |
| Plaintiff, | § § | Civil Action No. **3:09-CV-1989-L** |
| v. | § § | |
| **WELLS FARGO BANK, N.A.**, | § § | |
| Defendant. | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: (1) Wells Fargo Bank, N.A.'s Motion for Leave to File Affidavit of Joseph J. Norton, filed November 30, 2010; (2) Plaintiff's Motion for Summary Judgment, filed September 16, 2010; (3) Wells Fargo Bank, N.A.'s Amended Motion for Summary Judgment, filed September 16, 2010; (4) Defendant's Motion for Leave to Designate a Responsible Third Party, filed December 1, 2010; and (5) Plaintiff's Motion for Leave to File Amended Complaint, filed December 7, 2010.

After a lengthy and careful review of the motions, briefs, appendices, responses, replies, record, and applicable law, the court (1) **grants** Wells Fargo Bank, N.A.'s Motion for Leave to File Affidavit of Joseph J. Norton; (2) **grants** Plaintiff's Motion for Summary Judgment; (3) **denies** Wells Fargo Bank, N.A.'s Amended Motion for Summary Judgment; (4) **denies** Defendant's Motion for Leave to Designate a Responsible Third Party; and (5) **denies** Plaintiff's Motion for Leave to File Amended Complaint.

I. **Factual and Procedural Background**

This is a case related to *Securities and Exchange Commission vs. W Financial Group, LLC, et al.*, Civil Action No. 3:08-CV-00499, which was decided in the United States District Court for the Northern District of Texas, Dallas Division, Judge David C. Godbey presiding. That court entered an order on November 14, 2008, which appointed Vernon T. Jones, Jr., as Receiver for W Financial Group, LLC ( in this case, "Plaintiff") for the purposes of recovering W Financial Group, LLC's assets for the benefit of investors. The order further authorized Plaintiff to institute such actions or proceedings as necessary, and it directed that all such actions be filed in this court. Accordingly, supplemental jurisdiction over this action is proper pursuant to 28 U.S.C. § 1367.

Plaintiff filed its Original Complaint against Defendant Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo") in this court on October 20, 2009. Plaintiff asserts two causes of action against Defendant: conversion and breach of contract. Both parties filed cross motions for summary judgment on September 16, 2010, and they contend that this case turns solely on a question of law, as the facts are largely undisputed.

Plaintiff's claims in this case arise from the issuance of a cashier's check by Defendant. On September 13, 2006, Plaintiff took steps to open a business cash management account with Wells Fargo. Adley Abdulwahab ("Wahab") was an authorized signer on Plaintiff's account. On January 29, 2007, Wahab withdrew $1,701,250 from the account to purchase a cashier's check from Defendant for that amount, payable to the order of Lubna Lateef, Misba Lateef, Shahad Lateef, and Zahed Lateef (collectively, the "Lateefs"). On the same day, after acquiring the cashier's check, Wahab instructed Defendant that he wished to deposit the cashier's check into another Wells Fargo account for the entity CA Houston Investment Center, LLC ("CA Houston"). Wahab was the sole

authorized signer on the CA Houston account. Wells Fargo complied with Wahab's instructions and made the deposit into the CA Houston account.

Plaintiff contends that Wells Fargo's transactions with respect to the $1,701,250 cashier's check were improper and that they constituted conversion and breach of contract. Defendant maintains that such claims fail as a matter of law because Plaintiff cannot establish that Wells Fargo breached any duty of good faith, exercise of ordinary care, or commercial reasonableness. Additionally, Defendant argues that Plaintiff's alleged damages are unrelated to the events described in the Original Complaint and that Plaintiff's claims are further barred by the statute of limitations and the *in pari delicto doctrine*.

## II.    Legal Standard – Motion for Summary Judgment

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not

make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III. Analysis

#### A. Cross Motions for Summary Judgment

Plaintiff and Defendant have each filed motions for summary judgment. The court agrees with the parties in that the facts of this case are not disputed; there is no genuine issue of material fact. What remains is a question of law for the court to decide. The court will address the conversion claim and breach of contract claim separately.

##### 1. Conversion

Under the Uniform Commercial Code ("UCC"), an instrument, including a cashier's check, is "converted if . . . a bank makes or obtains payments with respect to the instrument for a person not entitled to enforce the instrument or receive payment." Tex. Bus. & Com. Code Ann. § 3.420 (Vernon 2002). Plaintiff advances its conversion claim under the theory that Wells Fargo was a bank that made payment with respect to the cashier's check for Wahab, who Plaintiff contends was not entitled to enforce the instrument. Defendant argues that Wahab was the authorized signatory for Plaintiff and that he was accordingly entitled to enforce the instrument, as there was no practical distinction between Plaintiff and Wahab. In other words, Wells Fargo contends that Plaintiff (through its agent Wahab) was still the owner of the cashier's check because the cashier's check had not yet been delivered to the payee. Wells Fargo argues that it was proper to follow Wahab's instructions with respect to depositing the cashier's check into the CA Houston account because Wahab was Plaintiff's agent and was a signatory on Plaintiff's bank account.

The UCC defines a "person entitled to enforce" an instrument as "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to

Section 3.309 or 3.418(d)." *Id.* § 3.301. It is undisputed that Wahab had possession of the cashier's check. Therefore, for him to be a "person entitled to enforce" the instrument, Wahab either needed to be a holder or a person with the rights of a holder. A "holder" is defined under the UCC as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." *Id.* § 1.201(21)(A). It is undisputed that Wahab was not the payee of the instrument. The Lateefs were the payees. Further, although Wahab was the bearer of the instrument, the cashier's check was not payable to the bearer, and Wahab was not a "holder" under the UCC. Wells Fargo nevertheless suggests that Wahab was entitled to enforce the instrument; thus Wells Fargo implicitly argues that Wahab was a nonholder in possession with the rights of a holder. The court disagrees.

First, after reviewing the summary judgment evidence and taking into account the special considerations of Plaintiff as a closely held entity managed by only three actors (one of them being Wahab), the court determines that Wahab was undisputedly Plaintiff's agent and that he had the authority to act on behalf of and bind the entity. This, however, did not elevate Wahab to the level of a nonholder in possession with the rights of a holder. The court believes that, regardless of Plaintiff or Wahab being the "owner" of the cashier's check, neither Plaintiff nor Wahab was a "holder" within the meaning of the UCC. Further, no evidence has been presented establishing that either had obtained the rights of a holder. There was no indorsement and there was no transfer. There was only an issuance from Wells Fargo following Wahab's purchase. Accordingly, Plaintiff, through its agent Wahab, was rightly characterized as the remitter. *See id.* § 3.103(a)(11).

The UCC elaborates on the role of the remitter in a transaction such as the one in this case:

> It is more common, however, that the check when issued will be payable to Seller. In that case Buyer is referred to as the "remitter."

> The remitter, although not a party to the check, is the owner of the check until ownership is transferred to Seller by delivery. This transfer is a negotiation because Seller becomes the holder of the check when Seller obtains possession.

*Id.* § 3.201, comment 2 (citation omitted). Here, the cashier's check was never delivered to the Lateefs (who would have been "Seller" in the above example), and they accordingly never became the holder. CA Houston was wholly unrelated to the Lateefs; thus the effect of delivery of the cashier's check to the CA Houston account with respect to the creation of holder's rights was null.

The court conducted an extensive amount of research in an effort to determine whether simply being the "owner" of a cashier's check instills a remitter with the authority to "enforce the instrument," despite not being a holder. The court was able to locate authority stating that "[i]n Texas the owner of a note may enforce it even if he is not a holder." *State Sav. & Loan Ass'n of Lubbock v. Liberty*, 863 F.2d 423, 426 (5th Cir. 1989) (citations omitted). The critical issue that makes this point of law inapposite, however, is that a cashier's check cannot rightly be characterized as a "note." *See* Tex. Bus. & Com. Code Ann. § 3.104(e)-(g) (drawing a distinction between "note" and "draft," and characterizing a cashier's check as a draft, not a note); *Wertz v. Richardson Heights Bank & Trust*, 495 S.W.2d 572, 574 (Tex. 1973) (characterizing a cashier's check as a "draft"); *Arline v. Omnibank*, 894 S.W.2d 76, 79 (Tex. App.—Houston [14th Dist.] 1995, no writ) (rejecting the view of a cashier's check as a "note"). Accordingly, the court rejects Wells Fargo implicit argument that, merely because Plaintiff (through its agent Wahab) was the "owner" of the cashier's check, Wahab was a person entitled to enforce the instrument.

After Wells Fargo issued the cashier's check (made payable to the Lateefs), Wahab directed Wells Fargo to deposit the cashier's check into CA Houston's bank account at Wells Fargo. Thus, Wells Fargo was both the issuing bank and the depository bank of the cashier's check. It is

undisputed that the Lateefs did not indorse the cashier's check. "As reflected in section 3.420, the UCC generally places the burden on the first bank in the collection chain to insure the requisite endorsements are present and authentic." *Southwest Bank v. Info. Support Concepts*, *Inc.*, 85 S.W.3d 462, 465 (Tex. App.—Fort Worth, 2002), *aff'd,* 149 S.W.3d 104 (Tex. 2004) (citations omitted). "The rationale is that depository banks are in the best position to discover forged or omitted endorsements because of their face-to-face dealings with the endorser or holder presenting the check." *Id.* (citations omitted). "From this rationale, it follows that if a depository bank pays a check to one other than the actual payee or to his order, or is mistaken as to the payee's identity or is paid upon a forged endorsement of the payee, the depository bank is responsible." *Id.* (citing Tex. Bus. & Com. Code Ann. § 3.420, comment 1) (other citations omitted). "Under section 3.420, therefore, a depository bank is liable for conversion if it obtains payment on an instrument that is missing a necessary endorsement." *Id.* Because the cashier's check was made payable only to the Lateefs, their indorsement was necessary before the cashier's check could be deposited into the CA Houston account. Because Wells Fargo deposited the cashier's check without the necessary indorsement, and because Wahab was not a person entitled to enforce the instrument, Defendant is liable for conversion under section 3.420 of the UCC for the amount of the cashier's check.

When Wahab ordered the cashier's check to be redeposited into CA Houston's account, the deposition testimony of Wells Fargo employees reveals that they understood that Wahab had changed his mind with respect to whom the funds would be paid. At that point, Wells Fargo should have canceled the outstanding cashier's check payable to the Lateefs and issued a new cashier's check payable to CA Houston. Wells Fargo did not do this. Instead, Defendant deposited the cashier's check payable to the Lateefs directly into the account of CA Houston, without requiring

indorsement from the Lateefs. Defendant's expert opinion, submitted by SMU Law Professor Joseph J. Norton, characterizes this conduct as a minor oversight or "clerical error" and urges that Wells Fargo should not be held liable for conversion of the instrument as a result of such an innocuous miscue. The court takes a different view. What Professor Norton characterizes as a minor oversight, the court characterizes as a critical omission. Indeed, the court finds that the absence of the necessary indorsement by the Lateefs is dispositive under Texas law. *See Southwest Bank*, 85 S.W.3d at 465. When Wahab ordered Defendant to deposit the cashier's check into CA Houston's account, Wells Fargo should have first required indorsement from the Lateefs or canceled the cashier's check and issued a new one payable to CA Houston. Although the Lateefs are not a party to this lawsuit, and although the cashier's check was never delivered to them, their indorsement was still necessary, so long as they were the named payees on the cashier's check, before depositing the check into the CA Houston account. Simply depositing the cashier's check into CA Houston's account while skipping that vital step was unacceptable, commercially unreasonable, and amounted to conversion under the UCC. Wells Fargo was unable to produce any bank policies or procedures that authorized its deposit of the cashier's check into the CA Houston account without first requiring a proper indorsement from the named payees.

The court now addresses Defendant's argument that a remitter may not recover for conversion if the remitter relinquished ownership of the instrument. This legal issue was analyzed in a Boston College Law Review Article. *See* Gregory E. Maggs, *Determining the Rights and Liabilities of the Remitter of a Negotiable Instrument: A Theory Applied to Some Unsettled Questions*, 36 B.C. L. Rev. 619, 654-55 (1995). In this case, Defendant argues that Wahab's actions were imputed to Plaintiff, because Wahab was Plaintiff's agent. Accordingly, Wells Fargo states

that when Wahab ordered the cashier's check to be deposited into CA Houston's account, he relinquished ownership of the cashier's check and that, by extension, Plaintiff relinquished ownership of the cashier's check. The result, Defendant argues, is that Plaintiff cannot claim that the cashier's check was converted when it willingly gave up ownership of the instrument. While the law review article upon which Wells Fargo relies is well written and persuasive, its analysis does not apply to the facts of this case.

Although the court previously determined that Wahab was, in fact, Plaintiff's agent, it is a rudimentary function of the law of agency that the agent is bound by a duty not to act adversely to the principal. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 200 (Tex. 2002) ("[In] Texas . . . '[u]nless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency.'") (quoting Restatement (Second) of Agency § 387 (1958)). When Wahab redirected the deposit of the cashier's check into CA Houston's account, an account on which Wahab was the sole authorized signatory, it was apparent that he was acting adversely to the interests of his principal. He was engaging in theft. Wahab's subsequent indictment for his criminal involvement in a multi-million dollar fraudulent scheme make this all the more clear. When an agent begins acting adversely to his principal, the agent's misdeeds should not be imputed to the principal, and the court declines to do so here. Accordingly, the court rejects Defendant's argument that Plaintiff forfeited its conversion claim when it relinquished ownership of the cashier's check.

There is no genuine issue as to any material fact regarding Plaintiff's conversion claim, and Plaintiff is entitled to judgment as a matter of law. As the court has ruled that Plaintiff is entitled to judgment as a matter of law, to also grant Defendant's amended motion for summary judgment

would be inconsistent with the ruling herein made. The court therefore will deny Wells Fargo Bank, N.A.'s Amended Motion for Summary Judgment.

### 2. Breach of Contract

Having decided that Wells Fargo is liable for conversion under the UCC for the amount of the cashier's check, the court need not address Plaintiff's breach of contract claim. Under a breach of contract theory in a case of this nature, the maximum amount of damages Plaintiff could recover is the value of its loss which, in this case, is the value of the converted cashier's check. Although Plaintiff requests attorney's fees in connection with its breach of contract claim, it is clear from the briefing that Plaintiff's breach of contract theory is premised upon a breach of some implied contract between itself and Wells Fargo with respect to the cashier's check. Because Section 38 of the Texas Civil Practice and Remedies Code only authorizes recovery of attorney's fees for breach of an *oral or written* contract, Plaintiff's request for attorney's fees is inapplicable. Accordingly, the court believes that Plaintiff's breach of contract claim is moot and declines to address it.

### 3. Procedural Defenses

Wells Fargo asserts three procedural defenses to Plaintiff's claims: standing, statute of limitations, and the *in pari delicto* doctrine. The court rejects these defenses. First, with respect to standing, the converted funds came from Plaintiff's account. That the Lateefs, the named payees of those funds, are not bringing this claim is of no moment. Plaintiff, the remitter, had its funds converted, and the remitter is allowed to bring a cause of action against the depository bank for conversion. Plaintiff has standing to bring this suit.

Second, with respect to the statute of limitations, the conversion took place on January 29, 2007, and this lawsuit was filed on October 20, 2009. The UCC allows a three-year statute of

limitations for such claims. Tex. Bus. & Com. Code Ann. § 3.118(g)(1). As to the breach of contract claim, Wells Fargo asserts that the statute of limitations was artificially limited by the account agreement to a six-month period. Texas law makes clear, however, that any such contractual provision purporting to shorten the limitations period to less than two years is void. Tex. Civ. Prac. & Rem. Code Ann. § 16.070(a) (Vernon 2008). Plaintiff's claims were timely filed.

Third, with respect to the *in pari delicto* doctrine,[1] the court rejects this defense because the court draws a distinction between the bad actor (Wahab) and Plaintiff, notwithstanding that the bad actor was at one time Plaintiff's agent. Here, the instant that the bad actor took actions that were against the interest and authorization of the principal, the agent's conduct could not rightfully be imputed to the principal. Plaintiff did not engage in any wrongful conduct or authorize Wahab to steal its money. The *in pari delicto* doctrine therefore does not apply to Plaintiff's claims.

### B. Other Pending Motions and Objections

#### 1. Deposition Testimony and Affidavit

Plaintiff objects to the affidavit of Johanna Cook, and Defendant objects to the deposition testimony of Samuel Edwards, Maria Rosas, and Johanna Cook. The court carefully considered the parties' arguments with respect to this evidence and, to the extent that the deposition testimony and affidavit violated the summary judgment standard herein enunciated by the court and the evidentiary standard under Rule 56 of the Federal Rules of Civil Procedure, the court did not consider them. In all other respects, the court found the evidence admissible, and it accordingly **overrules** the objections to the deposition testimony and affidavit. Moreover, regardless of whether the court did

---

[1]This doctrine stands for the proposition that a plaintiff cannot recover damages from a defendant on a claim arising from the plaintiff's own wrongful conduct. *See Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1197 (5th Cir. 1995).

**Memorandum Opinion and Order – Page 12**

or did not consider this evidence, the outcome of the court's foregoing legal analysis would have been the same.

2. **Expert Opinions of Professor Norton and William R. Welch**

The parties have objected to the expert opinions provided by Professor Norton and William R. Welch. The court **overrules** these objections to the extent that the parties argue that such opinions are inadmissible. Portions of the expert opinions provided useful factual background information regarding Plaintiff's claims. Insofar as the experts have expressed opinions that Wells Fargo's conduct should make it liable or not liable for conversion, however, the court disregards the testimony because it does not assist the court in determining any issue of fact. *See* Fed. R. Evid. 702. The court is the source of the law, not the expert. *Bodzin v. City of Dallas*, 768 F.2d 722, 725 (5th Cir. 1985) ("The judge is the source of the law and the only expert needed by [the trier of fact]."). The parties have agreed that the facts are not in dispute; what therefore remains is a question of law for the court to decide. The court accordingly **grants** Wells Fargo Bank, N.A.'s Motion for Leave to File Affidavit of Joseph J. Norton, filed November 30, 2010. A party is allowed to respond to an expert opinion with the opinion of its own expert.

3. **Motion for Leave to Designate Responsible Third Party**

Defendant filed a Defendant's Motion for Leave to Designate a Responsible Third Party on December 1, 2010, for the purposes of including Wahab as a responsible third party with respect to Plaintiff's claims pursuant to section 33.004 of the Texas Civil Practice and Remedies Code. The Texas Supreme Court has made clear, however, that the proportional responsibility statute does not apply to a conversion claim under the UCC. *See Southwest Bank v. Information Support Concepts, Inc.*, 149 S.W.3d 104, 111 (Tex. 2004) ("We conclude that the Legislature did not intend to upset

the UCC's carefully balanced liability provisions by applying Chapter 33 [of the Texas Civil Practice and Remedies Code] to a UCC-based conversion claim. To hold otherwise would ignore the UCC itself and thwart its underlying purpose."). Accordingly, the court **denies** Defendant's Motion for Leave to Designate a Responsible Third Party.

### 4. Motion for Leave to File Amended Complaint

Plaintiff filed Plaintiff's Motion for Leave to File Amended Complaint on December 7, 2010, for the purposes of adding a new conversion and breach of contract claim concerning another cashier's check (for the amount of $380,000) deposited into the CA Houston account on December 26, 2006. The court issued a scheduling order on February 2, 2010, that required all amended pleadings to be filed by May 3, 2010. Plaintiff's request for amendment comes seven months after the amended pleading deadline set by the court. Rule 16 is the governing standard to modify a scheduling order.

Before the court can modify a scheduling order and grant leave to amend a pleading under Rule 15(a) of the Federal Rules of Civil Procedure, the movant must first show "good cause" for failure to meet the scheduling order deadline under Rule 16(b). *S & W Enters., L.L.C. v. Southwest Bank of Alabama*, 315 F.3d 533, 536 (5th Cir. 2003) ("Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired."). A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b). The good cause standard requires the "party seeking relief to show that the deadlines [could not] reasonably be met despite the diligence of the party needing the extension." *S & W Enters.*, 315 F.3d at 535 (citation omitted). "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *Id.* at

536. In deciding whether to allow an untimely amendment, a court considers "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id*. (internal quotation marks, brackets, and citations omitted).

Plaintiff relies solely on Rule 15(a), which is the incorrect rule. At this juncture, Rule 16(b) applies; however, Plaintiff has not discussed the "good cause" standard under Rule 16. The court, therefore, is unable to determine whether it should amend the current scheduling order to allow Plaintiff to amend its complaint.

In any event, even if good cause exists, the court is convinced that amendment would be futile and cause undue delay.[2] First, as to the conversion claim, the statute of limitations imposed by the UCC is three years. Tex. Bus. & Com. Code Ann. § 3.118(g)(1). Because Plaintiff seeks to add this claim more than three years after the alleged conversion took place, it is time-barred.

Second, as to the breach of contract claim, the UCC also limits actions for beach of warranty or actions "to enforce an obligation, duty, or right arising under this chapter and not governed by this section" to three years. *Id.* § 3.118(g)(2)-(3). Although the statute of limitations for contract claims in Texas is four years, the court believes that subsections 3.118(g)(2)-(3) of the UCC specifically control the type of implied contract claims asserted here, and that the statutory limitations period is three years. In other words, the court determines that Plaintiff's breach of contract claim concerns the enforcement of obligations or duties "arising under this chapter and not governed by this section." *Id.* § 3.118(g)(3). Because Plaintiff seeks to add this claim more than three years after the alleged breach took place, it is time-barred.

---

[2]*See Foman v. Davis*, 371 U.S. 178, 182 (1962) (listing examples of proper grounds for a court to deny a Rule 15(a) motion for leave to amend, including undue delay and futility of amendment).

**Memorandum Opinion and Order – Page 15**

Further, the court sees no reason in this case why the Receiver bringing this lawsuit should have the statute of limitations tolled until the time when he was appointed. W Financial Group, LLC did nothing to conceal its prior bank statements from the Receiver, and it could have brought suit on this cashier's check in a timely manner.

Finally, even if the court determined that amendment would not be futile, it is without question that allowing such amendment would cause undue delay. Plaintiff's request for amendment already comes seven months after the deadline and granting it now would only serve to lengthen the disposition of this case, which was previously set for trial this month. Moreover, the court is unconvinced that Plaintiff was incapable of earlier discovering facts concerning the "new" claims had diligence been exercised. For these reasons, Plaintiff's Motion for Leave to File Amended Complaint is **denied**.

### 5. All Other Objections Pertaining to Pretrial Matters

Because the court found the cross motions for summary judgment in this case dispositive, the need for a trial is obviated. Accordingly, all objections pertaining to pretrial matters filed by the parties are **overruled as moot**.

## IV. Conclusion

For the reasons stated herein, the court determines that Wells Fargo converted a $1,701,250 cashier's check within the meaning of section 3.420 of the UCC. There is accordingly no genuine issue of material fact with respect to Plaintiff's claim for conversion, and Plaintiff is entitled to judgment as a matter of law. The court therefore **grants** Plaintiff's Motion for Summary Judgment, and Plaintiff is entitled for judgment in its favor for the amount of the converted cashier's check. The court **denies** Wells Fargo Bank, N.A.'s Amended Motion for Summary Judgment. Pursuant to

Rule 58 of the Federal Rules of Civil Procedure, the court will enter a judgment by separate document.

**It is so ordered** this 25th day of February, 2011.

                                                Sam A. Lindsay
                                                United States District Judge